**Not for Publication in West's Federal Reporter**
# United States Court of Appeals
## For the First Circuit

No. 19-1270

CÉSAR SANTANA,

Petitioner,

v.

BRAD COWEN, Superintendent, MCI Norfolk,

Respondent.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Thompson, Circuit Judges.

Elizabeth Caddick on brief for petitioner.
Maura Healey, Attorney General of Massachusetts, and Susanne G. Reardon, Assistant Attorney General, on brief for respondent.

July 7, 2021

**SELYA**, <u>Circuit Judge</u>. This case, which pits a state prisoner seeking federal habeas relief against the superintendent of the state correctional institution in which he is confined, turns on the narrow contours of federal habeas review and the deference due to the state court's findings of fact. Staying within those guardrails and reviewing the district court's denial of the habeas petition de novo, we affirm.

The essential facts may be succinctly summarized. The reader who thirsts for a more detailed description of the facts should consult the opinion of the court below, see Santana v. Cowen (Santana II), 361 F. Supp. 3d 115, 119-23 (D. Mass. 2019), and the opinion of the Massachusetts Supreme Judicial Court (SJC) rejecting Santana's direct appeal, see Commonwealth v. Santana (Santana I), 82 N.E.3d 986, 990-91 (Mass. 2017).

On August 25, 2004, Rafael Castro (Castro) and his stepdaughter, Norma Cedeno, were attacked by four men upon their return to Castro's apartment in Lawrence, Massachusetts. Castro was killed by a gunshot wound to his head. During the following week, petitioner-appellant César Santana (Santana), who was on probation in connection with an unrelated offense, contacted his probation officer and said that he was willing to disclose information about a shooting in Lawrence in exchange for money. The probation officer reported this contact to the Boston police.

- 2 -

The record sheds no light on what response (if any) the call elicited.

Seven months later, Santana — then incarcerated on unrelated charges — again contacted his probation officer about the shooting in Lawrence. Nothing happened. Eventually, however, the authorities decided to question Santana about the shooting.

On March 4, 2005, a Massachusetts state trooper, Robert LaBarge (LaBarge), interviewed Santana. LaBarge was accompanied by a bilingual member of the Lawrence police force, Detective Carlos Cueva (Cueva). Although Santana stated that he spoke and understood English, Detective Cueva was meant to serve as a translator, if needed, because Santana's primary language was Spanish. Santana consented to the recording of the interview "as long as it is not used in court."

Following a brief discussion of Santana's educational level, English and Spanish language proficiency, and the like, Trooper LaBarge, with Detective Cueva's assistance, gave Santana Miranda warnings. See Miranda v. Arizona, 384 U.S. 436, 444 (1966). At Trooper LaBarge's request, Santana read each warning out loud in Spanish and confirmed that he understood it. He then signed a copy of the written warnings.

When Trooper LaBarge began questioning Santana about the Lawrence shooting, Santana stated, early on, that he was "willing to help" but "want[ed] to talk with [Trooper LaBarge] without the

- 3 -

pressure of the tape recorder." Santana agreed to continue the interview with the officers taking notes. When the session concluded, though, Santana refused to sign the notes.

On December 12, 2008, an Essex County grand jury returned an indictment charging Santana with first-degree murder, home invasion, two counts of armed assault during a burglary, and two counts of kidnapping while armed with a firearm. Santana thrice moved to suppress the statements that he had made to Trooper LaBarge, but all three motions were denied. Following an eight-day trial, a jury found Santana guilty on all six counts, and the presiding judge sentenced him to life imprisonment. On August 17, 2017, the SJC affirmed the denial of Santana's third motion to suppress and affirmed his convictions and sentence. See Santana I, 82 N.E.3d at 992-95, 1002.

Santana repaired to the federal district court, seeking habeas relief. See 28 U.S.C. § 2254. He argued — as relevant here — that the SJC not only unreasonably determined that he had voluntarily made incriminating statements to Trooper LaBarge but also unreasonably applied clearly established federal law in finding those statements voluntary. He stressed his initial insistence that his statements "not [be] used in court."

In a thoughtful rescript, the district court denied Santana's habeas petition. See Santana II, 361 F. Supp. 3d at 131. It concluded that the SJC had not misapplied clearly

established federal law and that the SJC's determination that any promise of confidentiality had been wiped away by Santana's consent to the Miranda protocol withstood review under the deferential habeas standard. See id. This timely appeal followed.

We need not linger. We often have said that when a district court has "supportably found the facts, applied the appropriate legal standards, articulated [its] reasoning clearly, and reached a correct result, a reviewing court ought not to write at length merely to hear its own words resonate." deBenedictis v. Brady-Zell (In re Brady-Zell), 756 F.3d 69, 71 (1st Cir. 2014); accord De La Cruz-Candela v. JetBlue Airways Corp., 829 F. App'x 531, 532 (1st Cir. 2020); United States v. Wetmore, 812 F.3d 245, 248 (1st Cir. 2016); Moses v. Mele, 711 F.3d 213, 215-16 (1st Cir. 2013); Eaton v. Penn-Am. Ins. Co., 626 F.3d 113, 114 (1st Cir. 2010); Vargas-Ruiz v. Golden Arch Dev., Inc., 368 F.3d 1, 2 (1st Cir. 2004); Seaco Ins. Co. v. Davis-Irish, 300 F.3d 84, 86 (1st Cir. 2002); Ayala v. Union de Tronquistas de P.R., Local 901, 74 F.3d 344, 345 (1st Cir. 1996); Holders Cap. Corp. v. Cal. Union Ins. Co. (In re San Juan Dupont Plaza Hotel Fire Litig.), 989 F.2d 36, 38 (1st Cir. 1993). So it is here. We add only three sets of comments.

1. To begin, it is important to recognize that the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), see Pub. L. No. 104-132, 110 Stat. 1214, provides the beacon by which

we must steer, see Cronin v. Comm'r of Prob., 783 F.3d 47, 50 (1st Cir. 2015). AEDPA only "permits federal courts to grant habeas relief after a final state-court adjudication of a federal constitutional claim if that adjudication can be shown to be 'contrary to,' or to have involved, 'an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or in the alternative, to have been 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" Foxworth v. St. Amand, 570 F.3d 414, 424 (1st Cir. 2009) (quoting 28 U.S.C. § 2254(d)). A state-court "decision is contrary to clearly established federal law either if it announces a rule of law that directly contradicts existing Supreme Court precedent or if the state court has reached a different result than the Supreme Court on materially indistinguishable facts." Cronin, 783 F.3d at 50. In conducting this tamisage, "the state court's factual findings are presumed to be correct, and they can be overcome only by clear and convincing evidence." Foxworth, 570 F.3d at 424 (citing 28 U.S.C. § 2254(e)(1)). Here, the district court faithfully applied these standards to conclude that Santana was not entitled to habeas relief.

2. In this court — as in the court below — Santana proffers a trio of factual determinations that he asserts were unreasonably made by the SJC. We review the district court's

- 6 -

evaluation of those proffers de novo, see id. at 425, and like that court, we conclude that each determination is amply supported by the record.

a. Santana asserts that the SJC unreasonably determined that he could "speak and understand a fair amount of English" and that he "fully understood what was going on" in the interview with Trooper LaBarge. Santana I, 82 N.E.3d at 992-93. But the recorded portion of the interview clearly demonstrated that Santana did understand some English, and the SJC's determination that Santana "understood what was going on" was supported by facts such as his seeking out of the police, his receipt of Miranda warnings in his native language, his avowed understanding of those warnings, and his knowledge that Trooper LaBarge planned to report the information Santana provided to the prosecutor.[1]  See id. at 994-95.

---

[1] Santana makes much of his claim that "[t]he SJC ignored the expert evidence that [Santana] spoke at a beginner's level of English and was only capable of conversing in English on a superficial level, such as a standard greeting."  But even though the SJC did not specifically mention this expert testimony, we cannot conclude that the SJC — which took pains to note that it had "conducted a complete review of the record," Santana I, 82 N.E.3d at 1002 — did not consider it.  After all, the SJC, relying heavily on the motion judge's decision (issued three days after presiding over a suppression hearing at which Santana's expert testified), drew the conclusion that Santana could speak and understand a "fair amount of English."  On this record, it seems quite likely that the SJC simply found the evidence unpersuasive.

b. Santana asserts that the SJC unreasonably determined that he understood that his statements to Trooper LaBarge could be used against him because he asked the police to stop the recording. See id. at 995. The SJC, however, put the shoe on the other foot: it reasonably concluded that Santana's request was an additional circumstance supporting its determination that Santana knew that his statements could be used against him. See id. Where, as here, the record permits two plausible but competing interpretations of the significance of a fact, the state court's choice between those competing interpretations cannot be set aside on habeas review. See Torres v. Dennehy, 615 F.3d 1, 5 (1st Cir. 2010); Desrosier v. Bissonnette, 502 F.3d 38, 43 (1st Cir. 2007).

c. Santana asserts that the SJC unreasonably determined that he spoke with the officers based upon self-interest and fear of another. See Santana I, 82 N.E.3d at 995. The SJC's determination, though, was solidly supported by the transcript of the interview, in which Santana stated, "I'm not worried for telling [Trooper LaBarge] and the police what I got to say, understand?, the thing is . . . that young nineteen-year-old guy, that little guy has about four deaths under his belt. That young guy has me . . . under a lot of pressure and terrified." Santana II, 361 F. Supp. 3d at 123.

3. Santana also claims that "the SJC's decision was contrary to and involved an unreasonable application of clearly

- 8 -

established federal law." That claim lacks force. As the district court correctly concluded, the SJC's determination was in conformity with clearly established federal law pertaining to voluntariness. See id. at 131. "In Miranda, the Supreme Court determined that the Fifth Amendment privilege against self-incrimination requires law enforcement personnel to warn a person subjected to custodial interrogation of certain constitutional rights." Id. at 129 (citing Miranda, 384 U.S. at 444). "The individual undergoing interrogation may elect to waive his rights, but such waiver must be 'made voluntarily, knowingly, and intelligently.'" Id. at 129-30 (quoting Miranda, 384 U.S. at 444). The district court recognized that the waiver "must be 'the product of free and deliberate choice'" to be "voluntary." Id. at 130 (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). It similarly recognized that to assess voluntariness, "courts may consider factors such as the defendant's age, education level, intelligence, whether they were informed of their constitutional rights, detention duration, whether questioning was lengthy and repetitious, and any use of corporal punishment." Id. (citing Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973)). The district court then supportably concluded that the SJC appreciated this clearly established federal law and applied it in a reasonable way. No more was exigible.

We need go no further. Santana has failed to carry his burden of showing, by clear and convincing evidence, that the SJC's factfinding was unreasonable. Similarly, he has failed to carry his burden of showing that the SJC either misapplied or failed to follow clearly established federal law. Hence, we summarily affirm the district court's denial of habeas relief for substantially the reasons elucidated in the district court's thoughtful rescript.

**Affirmed**. See 1st Cir. R. 27.0(c).